## Charles R. Gold, Appellee, v. J. Rousso and Samuel Wolf, Appellants.

## Gen. No. 30,210.

1. HARMLESS AND PREJUDICIAL ERROR—*admission of improper evidence where trial to court without jury.* It is not reversible error that on the trial of a case to the court without a jury improper evidence was admitted, where there is evidence in the record which will sustain the finding made by the court.

2. BAILMENTS—*admissibility of lease to defendants as evidence as to identity of persons operating restaurant check room.* In an action for the loss of an overcoat alleged to have been checked with defendants as operators of a restaurant check room, held that a written lease whereby that part of the premises used as a check room was demised to the defendants was admissible as evidence on the issue whether the defendants were operating the check room at the time in question.

3. BAILMENTS—*sufficiency of evidence to show defendants were operating restaurant check room.* Evidence in an action for the loss of an overcoat alleged to have been checked with defendants as operators of a restaurant check room, held sufficient to sustain a finding that the defendants were operating the check room at the times in question.

4. EVIDENCE—*admissibility of testimony characterizing document not offered in evidence as check.* It was not error to permit a witness to describe a document which she received as office manager as a check, although the instrument itself was not offered in evidence.

5. EVIDENCE—*admissibility of testimony by office manager of lessor that checks received by her from lessees were for rent.* It was not error to permit the office manager of lessors of a restaurant check room to testify that checks received by her from the lessees were for rent, where the question whether the checks so received were given for rent was not an ultimate question of fact in the case.

6. EVIDENCE—*sufficiency of foundation proof for admission in evidence of written lease.* In an action for the loss of an overcoat alleged to have been checked with defendants as operators of a

restaurant check room, proper foundation was laid for the admission in evidence of a written lease to defendants of that part of the premises used as a check room by testimony of the lessor's office manager that she had received from defendants checks in payment of rent, the suit not being based upon the lease nor upon a violation of any of its covenants.

7. DAMAGES—*sufficiency of evidence as to value of overcoat lost from restaurant check room.* Testimony by the owner of an overcoat lost from a restaurant check room as to the amount which he paid therefor to the tailor who made it to his measure from materials of his selection, held prima facie evidence of its value and not overcome by testimony as to the cost .of making overcoats at the times in question of the retail value of coats of that style.

8. DAMAGES—*measure of value of second-hand wearing apparel.* The rule that proof of the market value of personal property alleged to have been negligently lost is essential to a recovery therefor has no application to the loss of a used article of personal apparel.

Appeal by defendants from the Municipal Court of Chicago; the Hon. JOHN F. HAAS, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1925. Affirmed. Opinion filed November 23, 1925.

CHURCH, HAFT & ROBERTSON, for appellants.

No appearance for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

The defendants appeal from a judgment in the sum of $100 entered upon the finding of the court.

The statement of claim alleged that on February 3, 1924, the plaintiff was at the Mandarin Inn; that upon entering the place at that time he checked his overcoat with the defendants, paid the customary fee therefor and received a check; that the overcoat was of the value of $125; that he presented the check and requested the return of the overcoat and was informed by the checker in charge that the overcoat had been lost or mislaid; that he had requested the defendants to make good the loss, which defendants failed to do.

Attached to the statement of claim was an affidavit

of claim in which it was alleged that the suit was upon contract for the payment of money, and that the nature of plaintiff's demand was as stated, and that there was due, after allowing just credits, deductions and set-offs, the sum of $125.

The defendants filed an affidavit of merits, in which they denied that plaintiff was a guest at the Mandarin Inn on February 3, and denied that he had checked his overcoat with the defendants or either of them, or that he paid the customary fee or any fee to them or either of them, or that he received a check from the defendants, or either of them, as evidence of checking his overcoat. Defendants further denied that the overcoat was of the value of $125, or that the plaintiff upon leaving the Mandarin Inn requested the defendants, or either of them, to return his overcoat, and denied that plaintiff was at any time informed by any checker in charge that his overcoat had been lost or mislaid. Plaintiff has not appeared in this court to support the judgment.

The first error assigned and argued by defendants is the admission of improper evidence. However, as the trial was by the court without jury, this granted would not be reversible error, provided there is evidence in the record which will sustain the finding made by the court.

The defendants contend that improper evidence was received upon the issue as to whether the defendants were in fact at the time in question operating the check room in the Mandarin Inn, and particularly complain of the introduction in evidence of a written lease, whereby that part of the premises in which the check room was operated was demised to the defendants.

The affidavit of merits did not deny that defendants were operating the check room at the time in question. Moreover, after a careful consideration of all the evidence, we hold the lease was properly admitted in evidence. We think, too, there was sufficient evidence

(other than the lease) to sustain a finding that defendants were operating the check room.

The manager of the Mandarin Inn testified that his business was managing the resturant known as the Mandarin Inn; that there was a place there to check wearing apparel but that it was not operated by him and did not belong to the restaurant; that there was a check room in the restaurant operated in the premises conducted by the Mandarin Inn, and that there was a lease out, a concession for it; that his private secretary, Miss O'Farrell, conducted the affairs of the Mandarin Inn, and that she was then present.

Miss O'Farrell testified that she was the secretary and bookkeeper at the Mandarin Inn; that she knew the place where the garments were checked in the Inn, and that it was not operated by the Mandarin Inn; that that space had been rented to someone else; that in response to a subpœna *duces tecum* she had brought the lease along, which she produced; that she did not know the signature of Clifford Wolf, by whom the lease purported to be executed in behalf of defend-. ants; that she knew the party, Sam Wolf. The lease was thereupon marked for identification as plaintiff's Exhibit A.

Further, Miss O'Farrell said that she knew who was operating this check room in February, 1924, and in response to the question by plaintiff's counsel, "Who was?" she answered, "Rousso and Wolf." She was asked on cross-examination whether she had ever seen Jack Rousso doing anything in connection with the check room and she replied that she saw Sam Wolf but that she did not see Jack Rousso working in the check room, but she knew that he was connected with the check room; that Sam Wolf had been to the Mandarin Inn and had been in the check room; that she did not see him directing the girls because he did not do that.

On redirect examination Miss O'Farrell was asked if she had been receiving any checks from Rousso and

Wolf at any time, and she replied that she had, and the answer was allowed to stand over defendants' objection. She further said that she knew what the checks were for: that they were for the rent, the concession of the check room. The defendants moved to strike out the answer but it was allowed to stand. She further testified that she received these checks twice a year, and the answer was allowed to stand over defendants' objection.

We think it is apparent that the question of whether the lease was admissible depends upon whether the court erred in receiving this testimony. Defendants say that it was error to permit Miss O'Farrell to characterize the documents which she had received as checks, and that this permitted her to indirectly state the contents of these documents, contrary to the rule laid down in *Rawson v. Curtiss,* 19 Ill. 473. The instrument of which evidence was given in that case was denominated a letter of credit, a writing the contents of which were by no means so certain or well known in the business world as are the contents of a check. We can see no more reason why a witness should not be permitted to state that she received a check, in the absence of it, than to state that she received a book or any other object not produced.

It is also contended that it was error for the court to permit this witness to testify, in the absence of the checks, that the checks received were those of the defendants; and it is argued that in so doing she was allowed to testify to the authenticity of the signatures of Rousso and Wolf without showing that she knew anything about their signatures. She was not, however, questioned on this, and if it were in fact true that she was unacquainted with the signatures of Rousso and Wolf, that matter could have been easily determined upon cross-examination.

It is also argued that it was error to permit her to testify that the checks were for rent and that the witness was thus permitted to state her conclusion as to

the purpose for which the checks were given. A witness should not be permitted to testify to any conclusion on the issue to be submitted to the court or jury, but the question of whether those checks were given for rent was not an ultimate question of fact in the case; and here again, if the witness was testifying without knowledge as to what the checks were in fact given for, that fact could have been disclosed upon cross-examination. Every statement of fact is in one sense a conclusion of the person making it.

We think the evidence of Miss O'Farrell was properly received and that it laid the foundation for the introduction of the lease. The suit was not based upon the lease or for a violation of any of its covenants, and it was therefore not absolutely necessary that the execution of it by defendants should be proved. If defendants recognized it by the payment of rent thereunder, that was sufficient.

It is to be noted that not only did the affidavit of merits fail to deny that defendants were operating the check room at Mandarin Inn, but no evidence was offered by them tending to show the contrary, although such evidence, if it existed, was necessarily in their power to produce.

The defendants, however, further contend that there was no evidence to sustain the finding of the court as to the amount of the plaintiff's damages.

The evidence of plaintiff on this point was to the effect that he was forty years of age, had been buying clothes ever since he was fifteen years of age; that he knew the fair and reasonable prices of wearing apparel when he went to buy clothes for himself not only in Chicago but in different parts of the country; that the lost overcoat was made to his order by a tailor named Silverstein, and that it was made from measurements taken of the plaintiff; that it was a gray, medium colored gray, worsted coat of medium weight, with raglan sleeves, imported, and silk lined; that the material in the coat was selected by him, and that

Gold v. Rousso et al., 238 Ill. App. 427.

he paid Silverstein, the tailor, $125 for the coat.

Plaintiff's evidence further was to the effect that the coat was made for him in the latter part of November, 1923; that he had not worn it more than five or six times; that he kept it for use as a Sunday coat.

On the question of value the defendants produced a witness, one Horwitch, who testified that he was familiar with the reasonable values of overcoats in the City of Chicago for six years last past, both the retail and wholesale values, and also to a certain extent with the values of such goods after the same had been used. In reply to a hypothetical question he stated that in his opinion the overcoat was worth considerably less than $125. In response to questions by the court he said that the cost of the silk lining in the coat including the lining in the sleeves that would fit plaintiff, of the average quality that was usually put in overcoats, would cost from $10 to $30, depending on the quality of the silk; that the cloth and workmanship determined the value of an overcoat, and that an overcoat could be made for as low as $8 and for as high as $50; that a raglan sleeve overcoat was a drug on the market; that in the prior year, the early part of the season, they had been in good demand, but that overcoat dealers were trying to unload the same at fifty cents on the dollar, below actual cost.

The defendants contend that this evidence does not tend to show what the value of the coat was on February 3, 1924. With other cases *Barrett v. Van Pelt,* 45 Sup. Ct. Rep. 437, is cited. The question there involved concerned the value of eggs, and the court held that the proof of the market value of eggs at the date the same were delivered to the consignee was essential to the respondent's case, and that in the absence of this evidence the amount of the loss, if any, could not be determined.

The rule for which defendants contend is applied to ordinary articles of merchandise, the market cash price of which at any given time can be easily ascertained.

It is apparent, however, that the value of a used article of personal apparel cannot thus be proved. The rule plainly cannot be applied to determine the value of a made-to-order overcoat which has been slightly used. The law does not require better evidence than can be reasonably obtained, and we do not know of better evidence of the value to an owner of a second-hand, made-to-order overcoat than the price paid for it within a reasonable time of the date upon which the value is to be ascertained.

Such a sale of property of uncertain value is evidence so persuasive that the opinion of experts, as compared therewith, has little if any weight. What evidence, it may be asked, could have given the court better information as to the actual loss which plaintiff sustained? An analogous question was considered by the third division of this court in *Cloyes v. Plaatje*, 231 Ill. App. 183, with reference to the value of repairs made on an automobile. The court reviewed conflicting authorities and quoted with approval *Budd v. Van Orden*, 33 N. J. Eq. 143, where that court says: "The only absolute test we can have of the value of a merchantable article is what it has been sold for at a fair sale. All other means of ascertaining the value of a merchantable commodity are speculative and must, to a greater or less extent, be uncertain. A sale is a demonstration of the fact, while estimates, even by the best judges, are simply matters of opinion which, at best, are only approaches to the fact." The court therefore held that evidence of the amount paid by the plaintiff to the garage proprietor for repairing his automobile, which had been damaged in a collision with the automobile of the defendant, was presumptive evidence of the reasonable value of the repairs, the repairing being done by a regular garage man engaged in the repair business and there being nothing in the evidence to cast suspicion on the good faith of the plaintiff and the garage man.

We adhere to the law as there stated, notwithstand-

ing *Probasco v. Crane Co., ante,* p. 287.   We think the price actually paid for this overcoat was prima facie evidence of its value, and the prima facie showing was not overcome by other evidence.

The judgment is affirmed.

*Affirmed.*

McSurely and Johnston, JJ., concur.