Charlotte Proud, Plaintiff-Appellee, v. W. S. Bills & Sons, Inc., an Illinois Corporation, Defendant-Appellant, and Union Corporation, an Illinois Corporation, Defendant.

Gen. No. 69–57.

Third District.

January 8, 1970.

Rehearing denied February 12, 1970.

Gates W. Clancy, of Geneva, for appellant.

Berry & O'Conor, of Streator, for appellee.

ALLOY, J.

This is an appeal from a judgment of the Circuit Court of LaSalle County, entered pursuant to motion for summary judgment, against defendants, W. S. Bills & Sons, Inc., a corporation, and Union Corporation, a corporation, in the sum of $27,000 plus costs.

The action was instituted by plaintiff, Charlotte Proud, for damages sustained when a building on her property collapsed as a result of excavations made on adjoining property. The defendants in the action were the owner of the property, Union Corporation, an Illinois Corporation,

and W. S. Bills & Sons, Inc., the contractor excavating for the owner. The defendant-contractor, W. S. Bills & Sons, Inc., appeals from such judgment.

The building owned by the plaintiff was located on Main Street in Streator, Illinois. Defendant Union Corporation was the owner of the adjacent property. Union Corporation intended to demolish the building on its property in order to construct a new bank building on the site. The new construction required an excavation extending more than eight feet below the surface.

The provisions of chapter 70 of 1967 Ill Rev Stats, par 10, dealing with Protection of Adjacent Landowners became applicable. This statute provides that if an excavation is to be made which is less than eight feet in depth and is such as might cause damage to a building on adjoining land, the "owner or possessor" of the land on which the excavation is to be made, shall notify the adjoining property owner of such work and allow him 30 days in which to take steps to protect the building from damage. In section 2 of said Act, it is expressly provided that if the "owner or possessor" of the land on which the excavation is to be made fails to comply with the statute, he is liable for damages to the building on the property adjoining the excavation site.

Section 5 contains provisions in the event the excavation is deeper than the eight-foot standard depth foundations. Such section provides expressly:

> "If the excavation is intended to be or is deeper than the standard depth of foundations as herein defined, then the owner of the land on which the excavation is being made, if given the necessary license to enter on adjoining land, and not otherwise, shall protect the said adjoining land and any building or other structure thereon, without cost to the owner thereof, by furnishing lateral and subjacent support

37

to said adjoining land and all buildings and structures thereon, in such a manner as to protect the same from any damage by reason of the excavation and shall be liable to the owner of such property for any damages to the land or to any buildings or other structures thereon."

Section 6 of the Act provides:

"The owner or possessor of the land upon which the excavation is being made shall also be liable to occupants and tenants of such adjoining lands or structures thereon for any damage to their property or business, proximately resulting from injury to such land or structures, caused by the failure of such owners or possessor, making such excavation, to fulfill the duty set forth in subparagraph 5."

Union Corporation notified plaintiff of its intention to excavate, and the two parties entered into an agreement with respect to the party wall and the excavation. This agreement was entered into on December 29, 1966, and provided that the party wall was to be the sole property of plaintiff, Charlotte Proud. In such agreement is found the following provision:

"It is, however, further agreed between the parties hereto that said first party [Union Corporation] in order to protect the old party wall may construct such additional supports or underpinning as may be considered advisable by its engineers or agents and will have the right to cap said old party wall and the new wall to be constructed by said first party as in its opinion, or in the opinion of its engineers or agents will be advisable to avoid the accumulation of moisture between the old party wall and any additional wall that may be built by said first party. Said first party shall protect and save harmless the said second party [Charlotte Proud] from any

structural damage to said old party wall occasioned by the construction as above provided of additional supports or underpinning in, or under the foundation of said old party wall, or in the capping of said old party wall by said first party herein described."

On January 6, 1967, defendant Union Corporation entered into a contract with W. S. Bills & Sons, Inc. whereby the contractor, W. S. Bills & Sons, Inc. agreed to perform all services and furnish all materials necessary to erect the new bank building for Union Corporation. The contractor also was to excavate and protect the west wall of the Proud building. The agreement also provided that the contractor was to hold Union Corporation harmless of any claims for damages as a result of the contractor's work, including any damages to the Proud building.

The contractor began the excavation and dug to a depth of twelve feet, putting underpinnings under the Proud building foundation every six feet. On May 21, 1967, the west wall of the Proud building began to separate from the south wall at the grade line and dirt was observed falling away from beneath the wall. That night the entire west wall fell, causing the Proud building to collapse.

Plaintiff Charlotte Proud filed a complaint against both defendant-owner, Union Corporation, and the contractor, W. S. Bills & Sons, Inc. The complaint was in one count and it alleged the facts referred to generally herein, including the indemnity agreement between the owner and contractor. The complaint charged that the defendant-contractor failed to install the necessary support for the west wall of the Proud building and as a proximate result of such failure, the west wall of the Proud building collapsed causing damages to plaintiff's building of $28,000. The contractor's motion to strike such complaint was denied and contractor then filed an

39

answer denying all but the ownership and location of the lots. Defendant-owner also answered the complaint.

Plaintiff thereafter moved for summary judgment and attached four exhibits in support of the motion. One exhibit was the affidavit of a Mr. McNamara, Chairman of the Board of the Union National Bank of Streator. This affidavit specified that the bank owned the property and referred to the agreement with Charlotte Proud as to the west wall of her building and the agreement with the contractor, including the indemnity provisions. The affidavit likewise stated that the excavation was deeper than the eight-foot standard of the Illinois statute and that supports installed by the defendant-contractor were not sufficient, causing the Proud building to collapse. The affidavit also disclosed that Union National Bank had purchased the property from plaintiff on January 31, 1968, after the collapse of the building, for $8,000. Plaintiff had at the same time assigned her cause of action for destruction of the building to Union National Bank for $27,000. Another exhibit attached to the motion for summary judgment was an excerpt from a deposition of W. S. Bills in which he explained that the underpinning of the Proud wall went to a depth of twelve feet but failed to hold the wall. A third exhibit was the affidavit of a real estate broker, James Thorpe, who stated that on May 31, 1967, the Proud building was worth $23,000 and that the lot was worth $12,000, making a total valuation of $35,000. He also stated that it would cost $4,000 to clear the rubble, making the net value of the property (after the building collapsed) $8,000 (this fixed the loss due to the collapse of the building at $27,000, i. e., $35,000 less $8,000). Another exhibit was an affidavit establishing that it would cost $42,000 to reconstruct the building.

The record indicates there is controversy as to when notice of hearing on the summary judgment motion was given to attorneys for the defendant-contractor. Proof

40

of mailing of the notice of the hearing together with a copy of the motion for summary judgment and supporting affidavits, was filed in court showing mailing on November 4, 1968. The attorney for the contractor denied receiving such notice. On November 27, 1968, the date of the hearing on the motion for summary judgment, such attorney failed to appear. The hearing was then continued until November 29, 1968, and the attorney for the contractor was personally notified of this new hearing date. The attorney for the defendant-contractor appeared on November 29, 1968, and the matter was then heard. The record discloses no written request for a continuance made by attorney for the contractor when he appeared on November 29, 1968, although an oral request therefor was apparently made. Summary judgment was entered on November 29, 1968, against both defendants in the amount of $27,000. The contractor filed a post-trial motion and attached an affidavit of a Mr. Thorson. The affidavit based on information and belief stated that the value at $35,000 set for the Proud building resulted from an offer to purchase which was made by Union Bank to Charlotte Proud prior to May 31, 1967. The post-trial motion of the contractor was denied.

On appeal in this Court, defendant-contractor asserts that the judgment was improper for the reason that there could be no action under chapter 70, paragraph 10, 1967 Ill Rev Stats, on the strict liability theory as against the contractor as opposed to an owner or possessor of the land; that plaintiff could not sue directly on the contract of indemnity from the contractor to the owner; that plaintiff's complaint does not sufficiently allege the granting of the necessary license to the "owner or possessor" required by the statute; that there were material issues of fact capable of different inferences by reasonable men so that summary judgment was, therefore, improper; and, that it was an abuse of discretion in the

41

trial court to hold the hearing for summary judgment on November 29, 1968.

The basic issue before us in this cause is whether the Illinois statute relating to "Protection of Adjacent Landowners" permits a direct action not only as against the record title owner of the land but also against an independent contractor working for the record title owner.

 The statute under consideration was passed in 1957 and it changed the common-law rule with regard to the duty to support adjacent land. Under common-law precedents, the owner of improved property adjoining an excavation site had the duty to protect his own property from damage resulting from an excavation on adjoining property. The statute under consideration changed this duty when the excavation exceeded eight feet and placed the responsibility on the party excavating to support the land and adjacent property. It is apparent that the policy of the 1957 statute was to protect property owners with improved property whenever an excavation was being made on adjoining land which exceeded eight feet in depth. It is argued that if the contractor making the actual excavation were to be held subject to such strict liability along with the property owner, he would tend to be more diligent in making his excavation, and, thus, protection of the adjoining property owner (the objective of the statute), would be better served. Since the policy of the statute is to protect the adjoining property owner, then the statute should reasonably be construed in such manner as to make the protection effective. Under the rules relating to statutory construction, a statute such as the Illinois Statute passed in 1957 should not be construed as changing common-law interpretations unless there is a clear and specific intent expressed in the statute. Under the common law, action against both the property owner and the excavator was permitted in lateral

support cases, such as provided for in section 1 of the Illinois Act, where reference is made to "owners and possessors," with no other specification.

 There have been no Illinois cases which have been called to our attention or which we have discovered which determined whether an excavator can be sued under the provisions of chapter 70, paragraph 10, 1967 Ill Rev Stats. Prior to the 1957 Act, the common law of Illinois governed the question of lateral support. As we have indicated, under the common law in Illinois, a landowner had the right to recover for injury to unimproved land caused by removal by his neighbor of lateral support even though there was no negligence involved. If the excavator was negligent, the adjoining landowner could recover for injuries to both his land and his buildings even though there would have been no damage without the added weight of a building. Where an excavation was performed without negligence and the excavation resulted in injury to improved land next adjoining, there was no recovery if the injury would not have occurred if there had not been added the weight of the building.

Because of apparent confusion in certain cases in the State of Illinois relating to a nonnegligent excavation where property had been improved and was damaged by excavation on adjoining land, the legislature passed the Act under consideration in this case. In subparagraph 1 of this statute, it is expressly stated that the Act applies to "any owner or possessor of land intending to make or permit an excavation to be made upon his land," and such subparagraph requires that the owner or possessor notify the adjoining landowner and places the burden of providing support on the adjoining owner if the excavation is eight feet or less. Under subparagraph 5, however, if the excavation is to be in excess of eight feet "then the owner of the land on which the excava-

tion is being made," if given a license to do so, is required to provide support for the adjoining land. One question before us is whether this reference in the statute to "owner or possessor" in section 1 and the use of the word "owner" in section 5 relates only to the record owner of the land or whether it also covers an independent contractor making an excavation for the record owner.

In some states, liability has been imposed specifically both upon the record owner and the excavator, and in some of such states the liability was imposed under the common-law interpretation, and, in others by statute (1 Am Jur2d, "Adjoining Landowners", § 45). In section 72 of 1 Am Jur2d, it is pointed out that the general rule is that an action may be maintained against anyone who causes injury, "whether he is the owner of the adjoining land or not." It is stated that this follows because the right of the landowner to have his soil sustained by that adjacent to it is an absolute right and the right to have artificial structures supported is, when it has been acquired, of the same absolute character. In the annotation it is stated (section 72) :

> "Moreover, on the principle that all who participate in a tort are answerable for damages resulting therefrom, not only a person who makes an excavation, but any person who directs the excavation to be made or under whose authority it is made, may be held liable for the resulting injury to the adjoining land. Accordingly, an independent contractor excavating land under a contract with its owner may be held liable for damage to the adjoining landowner's buildings or other structures proximately resulting from the contractor's negligent acts or omission, or the owner and his contractor may be sued jointly for such damage."

In a case referred to in the American Jurisprudence Annotation, New York Cent. R. Co. v. Marinucci Bros. & Co.,

44

337 Mass 469, 149 NE2d 680, a railroad sought to recover damages to its right-of-way caused by an excavator who dug a trench along the right-of-way to lay a sewer. The action was against the excavator only and the court allowed recovery and stated, at page 682 of 149 NE2d:

> "It is well settled that for an excavation causing an injury to the soil of an adjoining owner in its natural state an action will lie, but that no recovery will be allowed in the absence of negligence or a direct trespass for an injury to structures by excavating the adjoining land . . . . Irrespective of the absolute liability for damage to the soil in its natural condition, an excavator owes a duty to an adjoining landowner to use reasonable care in his operations, and if as a result of his failure to use reasonable care he removes the lateral support of an adjoining owner he will be liable for all damages proximately caused."

There was no statute involved in the Massachusetts case referred to but the action against the excavator was based upon the common law.

■ ■ When a statute is enacted which covers an area formerly covered by common law, such statute should be construed as adopting the common law unless there is clear and specific language showing that a change in the common law was intended by the legislature. As stated in Cedar Park Cemetery Ass'n v. Cooper, 408 Ill 79, at 82, 96 NE2d 482:

> "A statute will be construed as changing the common law only to the extent the terms thereof warrant, or as necessarily implied from what is expressed. (Thompson v. Weller, 85 Ill 197.) It will not be presumed that an innovation was intended beyond what is specifically or clearly implied."

45

Although there was no direct Illinois common-law case involving lateral support of the character being considered in this case, where the court allowed an action directly as against the independent contractor actually performing the job, it is clear from cases in other jurisdictions and from the references to which we have alluded in this opinion, that under the common law, the excavator could be sued directly in a lateral support case along with the record owner of the land. Consequently, it is our conclusion that the statute under consideration in this case should not be construed as making a change in such common-law right to sue the excavator unless a change is specifically or clearly implied from the language of the statute.

■ ■ Subparagraph 1 of the statute refers to the "owner or possessor of land." It is clear that sentence of subparagraph 1 is meant to apply to all excavations regardless of depth. Under the circumstances, it is our conclusion that the term "owner or possessor of land" should be construed to mean not only the record title owner but any person in possession of the land for any reason. This would include an excavator or contractor as a "possessor" of the land under the terms of the statute. It is true that possession of the contractor may be merely for the purpose of making the excavation or the construction of a building, but he nevertheless has lawful "possession" of the land and should be construed to be a "possessor" as defined in subparagraph 1. The definition of "possessor" where it is used in a statute is not necessarily restricted to owners, lessees or similar occupants, where the objective of the Act is to control activities of "possessors," however fleeting such possession may be.

■ ■ We attach no significance to the fact that paragraph 5 in dealing with excavations of over eight feet refers to "owner" of the land only and not to "owner or possessor." We note that in subparagraph 6 the

words "owner or possessor" are used in providing for liability in excavating below eight feet. It is significant that in this subparagraph 6, the language "owner or possessor" is used when referring to the "duties set forth in subparagraph 5." It is our conclusion that the failure to mention "possessor" in subparagraph 5 was, therefore, a mere oversight and that subparagraph 5 applies to both "owners and possessors." It is also our conclusion that the word "possessor" should be given the broad construction consistent with the objectives of the Act.

 It is, therefore, our conclusion that since action could be taken against excavating contractors in ordinary lateral support actions, under common law, the Illinois lateral support statute to which we have referred herein should not be construed as limiting liability to owners, lessees or similar persons in occupancy. Action should be permitted as against the excavator as well as the owner of the land to give the statute its intended effect. To conclude otherwise would create undesired results such as the anomalous situation where the owner could be held responsible under the strict liability provision of the statute as a result of the contractor's acts, and where, nevertheless, such owner could not recover from the contractor because the contractor could establish that his acts involved nonnegligent standard procedures. We believe that the legislative intent was to give broad protection to adjoining landowners and that the use of the language "owners and possessors" was meant to include excavating contractors.

Although the indemnity provision of the contract between Union Corporation and W. S. Bills & Sons, Inc. was pleaded as part of the background for the action, the action was not based on the indemnity agreement in the present case. While the contractor would ultimately bear the financial burden of the loss in any event, it was not plaintiff's theory to invoke the indemnity provision,

since she filed an action directly as against the contractor along with the owner of the premises alleging a direct liability.

Another issue presented for consideration was whether the defendants had been given the necessary license required by statute to go upon the property of plaintiff to make the necessary supports. The statute provides that an adjoining property owner, in order to have a statutory right to sue for damages, must give "the necessary license to enter" on plaintiff's land in order to install necessary lateral supports. The record shows that the written agreement between the Union Corporation and Charlotte Proud provided that the Union Corporation, in order to protect the old party wall, could construct such additional supports or underpinning as may be considered advisable by its engineers or agents, etc. The written agreement between the plaintiff and the Union Corporation clearly granted the license required by the statute. There is no requirement in the statute that there be a separate written agreement for a license to install the supports, and as a matter of fact the statute does not require a written understanding with respect to the license. On the basis of the record, it is our conclusion that plaintiff fulfilled the statutory requirements with respect to granting a license in the case before us.

We do not believe that the counteraffidavit filed in the cause before us raised any issue of fact which would make summary judgment unavailable in the instant case. The facts alleged were consistent with what the plaintiff contended the damages were so that there was no issue to be passed upon by the jury under such circumstances. The affidavit specified that the $35,000 figure was based upon an agreement between the bank and the adjoining property owner. This was not inconsistent with the val-

uation established by the affidavit of the real estate broker.

■ The final issue for consideration by the Court is whether the trial judge abused his discretion by proceeding with the hearing on November 29, 1968, as a result of the confusion with respect to notice to the contractor's attorney. When the contractor's attorney failed to appear on November 27, the court granted the attorney an additional two days and set the hearing for November 29. The attorney appeared on November 29, 1968. There was no showing that the defendant's attorney made any written request for a continuance. If he wished to preserve the action of the court as error in this respect, such attorney could have filed a written motion for a continuance and attached affidavits showing why he would be prejudiced in being unable to proceed with the hearing at such time. We note also that there was nothing in defendant's post-trial motion or supplementary arguments which raised any factual issues. Accordingly, we believe there was no abuse of discretion on part of the trial court in the entry of summary judgment.

The judgment of the Circuit Court of LaSalle County will, therefore, be affirmed.

Affirmed.

STOUDER, P. J. and RYAN, J., concur.