FRANK BEHRENS *et al.*, Plaintiffs-Appellees, *v.* W. S. BILLS AND SONS, INC. *et al.*, Defendants-Appellants.

(No. 71-67; 

Third District—May 12, 1972.

James S. Mills, of Geneva, for appellants.

Peter E. Ferracuti, of Ottawa, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from the judgment of the Circuit Court of La Salle County in the sum of $66,000 against W. S. Bills and Sons, Inc. and Union Corporation, defendants. The trial court entered summary judgment in favor of plaintiffs Frank Behrens, Betty Moore and Pauline Lucas as against defendants on the issue of their liability to plaintiffs, and, thereafter, following a jury determination of the amount of damages, entered judgment on the jury verdict.

The action was instituted by plaintiffs for damages which were sustained when a building on the property leased by plaintiffs collapsed as a result of an excavation made on adjoining property by defendants. Defendant Union Corporation was the owner of the property and defendant W. S. Bills and Sons, Inc., was the contractor which excavated for the owner.

The action was instituted under the provisions of Chapter 70, Paragraph 10 of 1967 Illinois Revised Statutes which dealt with the "protection of adjacent landowners". The paragraph is contained in the current 1971 Illinois Revised Statutes as Section 51, Chapter 17½. On appeal in this case, defendants contend that no liability was alleged or established under the act; that plaintiffs did not furnish the license required by the act; and that plaintiffs complaint did not justify a recovery thereunder. Defendants also contend that the damages awarded were manifestly excessive and based on improper instructions and inadmissible

evidence. A contention is also made that a new trial should be granted by reason of the fact that insurance was prejudicially mentioned to the jury.

Plaintiffs, a father and his two daughters, operated a children's apparel retail store in Streator, Illinois, which had been in operation for more than 17 years and was located in premises which were leased from Charlotte Proud. The lease in force at the time of the destruction of the building was for a term of five years with approximately 4 and ½ years of the lease remaining at the time the building collapsed.

The Union Corporation owned the adjoining premises and had hired the Bills Corporation as a general contractor to demolish Union's existing building, to excavate thereon and to construct a new building. During the process of excavation, the Proud building collapsed. As a result thereof, plaintiffs filed their action under Paragraph 10 of Chapter 70 of 1967 Illinois Revised Statutes referred to.

We have had occasion to discuss at considerable length the effect of such section of the Act and of the right of the owner to recover damages as against the same defendants resulting from this occurrence in *Proud v. W. S. Bills and Sons, Inc.*, 119 Ill.App.2d 33, 255 N.E.2d 64. Section 6 of the Act referred to expressly contains language which specifies that the owner or possessor of the land on which the excavation is being made "shall also be liable to occupants and tenants of such adjoining lands or structures thereon for any damage to their property or business * * *." As we pointed out (in *Proud*), Paragraph 10 of Chapter 70 of 1967 Illinois Revised Statutes, provided for strict liability of owners or possessors of land for damage to adjoining land and structures resulting from excavation below a so-called "standard depth" if such adjoining owner or possessor had received "the necessary license to enter on" the adjoining land in order to protect it. The standard depth referred to was 8 feet and excavations below such standard depth are expressly covered by the provisions of such act. The collapse of the building, as we had indicated in the *Proud* case, resulted proximately from the excavation and from defendants' failure to provide the required subjacent and lateral support.

In the trial of this cause, plaintiffs had moved for summary judgment and supplemented the pleadings by affidavits, answers to interrogatories and depositions including certain exhibits (which included the written lease between plaintiffs and Charlotte Proud). They also incorporated the agreement between Charlotte Proud and Union Corporation. Under such agreement Union Corporation surrendered its right to the party wall which formerly had existed between the Proud building and the Union building and Charlotte Proud permitted Union to enter her

building and Union obligated itself thereafter to protect the wall. The wall was to remain an integral part of the Proud building. Another exhibit which was submitted was the contract by which Union hired Bills. It included an affidavit of the chairman of Union National Bank of Streator, the occupant of the new building to be constructed, and stated the ownership of that building and the adjacent location of the premises, and referred to Union's plan to excavate the land to a depth of approximately 12 feet. Union's agreement to protect Charlotte Proud and her building and to save her harmless from structural damage to what had formerly been the party wall, together with Union's hiring of Bills to undertake the demolition of the old bank building and the excavation as well as the construction of the new building (including the agreement to protect the former party wall) were likewise incorporated. Bills agreement to hold Union harmless was also included therein.

It was established specifically by affidavit that the Bills Company pursuant to the contract with Union Corporation, excavated to a depth of approximately 12 feet; that Bills placed certain supports under the wall and that the supports were insufficient to hold the wall in place by reason of which the wall cracked and collapsed and caused the roof and the walls of the Proud building to collapse and fall. Certain photographs attached as exhibits showed the destruction. Union National Bank of Streator had subsequently purchased the Proud building and the claim or cause of action resulting from its destruction. It was also shown that no prior tests were made to determine whether the building to be demolished was a source of lateral support for the Proud building.

The Bills Corporation resisted the granting of summary judgment and alleged that the cause of the collapse was a question of fact, and that plaintiffs' exhibits related to Union's agreement with Charlotte Proud the lessor and not with the plaintiffs as lessees. The Bills Corporation claimed that plaintiffs had the sole right to license Union to enter the property.

After the trial court had entered summary judgment, plaintiffs moved to amend their complaint by alleging that the excavation was 12 feet deep, being deeper than the "standard depth" of foundations; and that defendants had been given the necessary license to enter plaintiffs' premises but had failed to furnish the subjacent and lateral support required by the statute. When the record was submitted on appeal, neither an order allowing the motion to amend, nor the amendment appeared therein. Plaintiffs attempted to correct the omission by inserting the amendment by letter. Defendants claimed they had not seen any order permitting plaintiffs to file the amendment and they believe that none existed. Plaintiffs asserted that the omission of the amendment was

due to an inadvertent error of the Clerk of the Court. Plaintiffs, therefore, asked that we allow amendment of the pleadings under Supreme Court Rule 362 of this State to cause the pleadings to conform to the proof presented in the trial court.

■■ We agree that the issues raised in the amendment presented were supported by the proof presented with plaintiffs' motion for summary judgment, and that there would be no prejudice or surprise to defendants if such amendments were incorporated formally in the pleadings on appeal. The amendments were necessary to aver the additional elements required by the statute. Since we consider the objections by defendants to have been essentially technical we allow the amendment to be filed. The filing of the amendment, we conclude, simply caused the pleadings to set forth formally what all the parties had regarded as material issues in this case. The count of the complaint as amended now sufficiently states the elements to establish a cause of action under said Paragraph 10 of Chapter 70 of the 1967 Illinois Revised Statutes.

■■■ The first issue which we are required to determine is whether the contractor which performed the excavation could be held strictly liable to plaintiffs under such section. We resolved this question in *Proud v. W. S. Bills & Sons, Inc., supra,* at the time of the decision in such case. In that case we determined that an independent contractor or an owner who excavates property to a depth greater than the "standard depth" may be liable as the "owner" or "possessor" of land under such section of the Act to the occupants of adjoining lands for damages proximately caused by the excavation. It is not necessary that we repeat at length the basis for our decision in such case which we now determine is applicable to permit lessees to maintain action as against the contractor and the owner in the present case. Section 6 of said Paragraph 10 of 1967 Illinois Revised Statutes expressly includes "tenants" as parties who may recover for damage to property or business proximately resulting from injury to the land or structures under the terms of the Act.

We indicated in our previous decision that the statute under consideration was passed in 1957 and that it changed the common law rule with regard to the duty to support adjacent land. The statute under consideration, when the excavation exceeded 8 feet, placed the responsibility on the party excavating to support the land and the adjacent property. We pointed out that it is apparent that the policy of the 1957 statute was to protect property owners and tenants with improved property, whenever an excavation is being made on adjoining land exceeding 8 feet in depth. It was observed that if a contractor making such excavation were to be held subject to strict liability, along with the property owner, the contractor would tend to be more diligent in his excavation

and, thus, the protection of the adjoining property owner or tenant would be better served.

A secondary issue which was raised in this case was whether the plaintiffs-lessees made a showing that the requisite license to enter upon the adjacent premises for the purpose of protecting against collapse, had been conferred upon the contractor Bills and the adjoining owner, Union Corporation.

In the *Proud v. Bills* case which we previously decided, the lessor-owner was the plaintiff and she clearly granted the license by the terms of a certain agreement. Plaintiffs assert that they had granted a license consisting of the same terms as we found lessor to have granted in our prior decision. Defendants contend that the license was not sufficient because the lessees had the right to possession as against all the world including the lessor, and that plaintiffs were not required to be bound by a license granted by her. Even assuming that defendants' argument was sound, the question before us is simply whether the lessees in fact were parties to a license which was sufficient under the statute.

■■ Defendants point to the futile negotiations between them and plaintiffs concerning the granting of a license. Such specific license was never given. As a practical matter, however, as relates to granting of access, plaintiffs adopted and commenced to perform under the agreement between Charlotte Proud and Union. The mere fact that plaintiffs were not signatory parties to a written agreement between Union and their lessor does not indicate that no agreement existed between the plaintiffs and defendants. The documents presented in support of plaintiffs' motion show, without contradiction, that the contractor Bills actually undertook to protect the party wall in accordance with Union's agreement with Charlotte Proud and that plaintiffs granted the contractor Bills the access that it required to perform such agreement. We, therefore, conclude that a proper license was in fact given by plaintiffs to defendants to comply with the terms of the statute.

The remaining issues in the cause before us relate to the question of damages. Defendants also contend that plaintiffs' mention of insurance prejudiced the jury deliberations and that a new trial should be ordered by reason thereof. We shall treat the contention relating to insurance before discussing the issues relating to damages.

■■■ Defendants had announced that their defense would be based largely on the alleged failure of plaintiffs to mitigate damages. Plaintiffs, therefore, asserted that they wished to present a witness who would testify that particular personal property had been completely destroyed by the collapse. A representative of a company named Underwriters Salvage Company had analyzed the damage for defendants. Due to the

mitigation defense. and also to support their case, plaintiffs indicated a desire to present this analysis and, also, to show that it had been performed by an expert who was defendants own agent. Plaintiffs asked that defendants stipulate that the representative was defendants' agent but defendants refused. Plaintiffs were entitled to have the representative testify and to show that he was in fact the agent of appellants. Plaintiffs identified the representative's employer but they did not mention insurance as such. Since the witness' testimony was material, and since no insurance was actually mentioned, we do not consider the identification of the witness to have prejudiced defendants sufficiently to justify a reversal of this cause. The determination of prejudice in such instances is largely within the discretion of the trial court. (*Clarke v. Rochford*, 79 Ill.App.2d 336, 224 N.E.2d 679, 682; *Granger v. Turley*, 20 Ill.App.2d 488, 156 N.E.2d 610, 612.) We conclude that such discretion of the trial court was not abused in the present case.

■■■ Defendants assert that plaintiffs failed as a matter of law to mitigate damages and that the jury, in determining damages and in considering mitigation, was wrongly permitted to consider plaintiffs' inability to finance the relocation of their business. Plaintiffs, on the contrary, claim that they were required to take only such steps in protection of the property as was reasonable. Plaintiffs had established that they sifted the rubble in order to locate damaged merchandise and to correlate it with particular invoices. They requested salvage bids in order to obtain the highest price for the damaged merchandise, and continued to pay rent for two months in order to provide shelter for the damaged items. They also attempted, without success, due to financial inability, to reopen their business at a new location. It was thus shown that plaintiffs attempted to mitigate damage by such procedures as they were able to do, on the basis of resources possessed by plaintiffs. They contended, and the trial agreed, that they were required to take only such action as was reasonable. Plaintiffs showed that they undertook such reasonable efforts to avoid loss as they were financially able to undertake.

The Bills instruction on mitigation was used by the court. It required plaintiffs to "exercise ordinary care to minimize existing damages and to prevent future damage". Plaintiffs' instruction was likewise used. It provided that "while reasonable efforts to avoid loss are required" plaintiffs were not required to take action which they were financially unable to take. Since the instructions when read together correctly stated the applicable law we see no basis for reversal on this ground.

■■■ While there is some confusion in the briefs and arguments as presented on appeal between the issue of the nature and amount of

damages to which plaintiffs would be entitled as a matter of law and the issue as to plaintiffs' duty to mitigate, it is clear that mitigation does not in itself involve the identity of the various recoverable elements of damage. It simply requires that plaintiff minimize, so far as reasonably possible, each given element of compensable damage. (*Fruehauf Trailer Co. v. Lydich,* 325 Ill.App. 28, 59 N.E.2d 551.) The question of plaintiffs' financial inability to relocate the business was a proper determinant as to whether plaintiffs adequately discharged their duty as to mitigation.

■■ Defendants contend that plaintiffs were permitted to introduce evidence that plaintiffs paid rent for two months following the collapse of the building and that because the jury was permitted to consider lost profits as a recoverable element, the two-months rent should not have been recoverable in addition thereto, and that it amounts to a double recovery. Plaintiffs responded to defendants' contention that plaintiffs failed to mitigate damages, by showing that the paid rent for two months following the collapse of the building in order to provide shelter for the partially damaged physical property. Payment of rent was never submitted by the court to the jury as a recoverable element of damages as a matter of fact. It was material to the issue of mitigation and was properly admissible for that purpose.

■■ Defendants on appeal also argued that plaintiffs should not have been permitted to have the jury consider, as an element of damage, interest on business loans incurred during the period of business interruption. This particular portion of the instruction was not objected to nor was there any specific objection made on any such ground in the trial court. It cannot now be initiated as an objection for the first time on appeal. *Saunders v. Schultz,* 20 Ill.2d 301, 170 N.E.2d 163; *Onderisin v. Elgin J & E Railway Co.,* 20 Ill.App.2d 73, 77-78, 155 N.E.2d 338, 341.

■■ The remaining issue relates to the manner in which amounts of particular elements of damage to fixtures and merchandise were computed. Where personal property is totally destroyed, the measure of damages is the reasonable value of such property at the time of destruction. (*H. K. Porter Co. v. Halperin,* 297 Fed.2d 442, 445. The measure of damages where there is less than total destruction to personal property, and where such damage is not capable of being repaired, is the difference between the reasonable value of such property before and after the damage. If the damaged personal property is repairable, the measure of damages is the cost of repairs plus the amount of the difference in value, if the value after repair is less than the value prior to damage. (*Lucas v. Bowman Dairy Co.,* 50 Ill.App.2d 413, 200 N.E.2d 374.

In his testimony in this cause, plaintiff Frank Behrens listed each

fixture. He expressed his own opinion as to value and bolstered such opinion by applying a value equal to a value extracted from a commercial fixture catalog, apparently considering the question of age, purchase price, use and condition. An expert testified as to the after-damage value of some fixtures such as the air conditioning unit. An expert testified also that after the collapse even the fixtures which were salvage and stored were worthless. There was testimony that the fixtures were in excellent condition prior to the collapse. Plaintiffs supplied the figures as to cost of the unsalvaged merchandise as shown by invoices. This merchandise was not recovered and was not available for inspection and evaluation following the collapse.

 Defendants assert that plaintiffs use of an unidentified catalog as a basis for Behrens opinion of the pre-collapse value of the fixtures is an improper foundation for such opinion as to value. They, also, now object to plaintiffs' use of cost as a basis for establishing value of the merchandise some of which was several years old. No objection was made on the ground that this evidence is based at least partly on hearsay. Behrens opinion was based on personal acquaintance with the fixtures, their price, age and condition. The opinion of a witness who is concerned with damage to his furniture and fixture is admissible as one of the guides for a jury determining the value. (*Chicago City Railway Co. v. T. W. Jones Furniture Transit Co.*, 92 Ill.App. 507.) The only thing unusual in the testimony of Behrens was that it was based partially upon the catalog prices. Since there was no specific objection to the hearsay nature of the catalog it is not possible for us to determine whether the catalog prices incorrectly formed the basis of Behren's opinion. As shown in *Brenton v. Sloan's United Storage and Van Co.*, 315 Ill.App. 278, 42 N.E.2d 945, a plaintiff could be allowed to establish familiarity with furniture on the basis of a knowledge of prevailing prices of such items based on shopping with friends, window shopping, noticing newspaper advertisements and hearing radio advertisements. Catalog prices, unobjected to, if stated to be appropriate by a witness could become a proper basis for valuation.

 The court instructed the jury to base damages on market value. The jury could consider not only costs among other factors as a basis for valuation, but also its own experience and such testimony as was presented which was material to such issue of value. Evidence superior in quality to that which the nature of the case permitted, is not required. *Gold v. Ruosso*, 238 Ill.App. 427, 434.

It appears that the court and the jury had proceeded in the determination of damages in accordance with guidelines established in precedents including those relating to the question of loss of profits such as *Meyer*

578

*v. Buckman,* 7 Ill.App.2d 385, 403, and *Best Manufacturing Co. v. Peoria Creamery Co.,* (a wall case), 307 Ill. 238. From our examination of the record in this cause, therefore, we do not believe that there is any reversible error shown in this cause.

The judgment of the Circuit Court of La Salle County will, therefore, be affirmed.

Judgment affirmed.

STOUDER, P. J., and SCOTT, J., concur.