(No. 74-CC-0715-)

AMERICAN MANAGEMENT AND MAINTENANCE CORP, as Agent for Beverly Bank, as Trustee under Trust No. 16338-1633; FIRST BANK OF OAK PARK as Trustee under Trust Agreement dated May 2, 1968, and known as Trust No. 8377; STEPHEN M. MULLINS, CAROL R. MULLINS and DAVID R. McNALLY d/b/a WEST PARK REALTY, Claimants, v. THE STATE OF ILLINOIS by the DEPARTMENT OF GENERAL SERVICES for the use of the DEPARTMENT OF MENTAL HEALTH DRUG ABUSE PROGRAM, Respondent.

*Opinion filed March 21, 1980.*

SCHUMACKER, JONES, VALLELY, KELLY & OLSON, for Claimants.

WILLIAM J. SCOTT, Attorney General (RICHARD J. GROSSMAN, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

This is a claim for damages alleged to have been inflicted by the Respondent on real estate and personal property leased by Respondent from Claimants.

The real estate involved in this action is 2127 North Kenmore, Chicago, Illinois. During the time of the lease period, the legal title to the property was held by the Beverly Bank, as Trustee under Trust No. 16338-1633. The beneficiaries of this trust were Claimants, Stephen M. Mullins, Carol R. Mullins and David R. McNally, who remained beneficiaries when the property was conveyed to the First Bank of Oak Park as Trustee under Trust No. 8377.

Claimant, American Management and Maintenance Corp., was the agent of the owners of the property.

The actual owners of this property are Stephen M. Mullins, Carol R. Mullins and David R. McNally.

The uncontested and unrebutted evidence indicated that Claimants purchased the building in question, which was a three flat building, including a basement and

garage, on May 15, 1970, from Harvey Shein. At the time of purchase, it was fully rented.

In 1969, the previous owner, Harvey Shein, testified that he completely and extensively renovated the premises. He testified in detail as to the work done which included stripping down the plaster on the walls, re-plastering, installing dry wall, installing new parquet hardwood floors, six fireplaces, new plumbing risers, new kitchen cabinets, new bathroom vanities, new bath-room plumbing fixtures, redecorating, carpeting, new closets, new windows and storm windows, new forced air heating system, and electrical upgrading.

Within one year, the newly renovated premises was sold to the claimants.

From September 16, 1971, through June 1973, the entire property and personal property contained therein was leased to the respondent for use by them as resi-dences for persons recovering from or participating in a drug abuse program. The written lease, if any there was for this period, was not produced by either party. The leasehold interest was extended by written lease, dated October 4, 1973, effective July 1, 1973, extending the lease to September 30, 1973.

In view of the fact that the possession of the premises was surrendered back to the lessor on Septem-ber 20, 1973, there was no explanation offered for the fact that the lease is dated after the date possession was yielded up. However, Respondent stipulated to the admission into evidence of the lease and in its argument and brief does not contest the validity, applicability or enforceability of the lease.

Harvey Shein testified that there was no wear and tear on the premises at the time respondent took posses-sion of them. Respondent's witness. F. Schumacher,

testified to the excellent condition of the building at the time of Respondent's taking possession.

Claimants' evidence was that in March 1973 the premises began to degenerate into disrepair, becoming even worse in the period of July through September 1973. When the premises were vacated by respondent, the premises were left open and unsecured. The evidence was uncontradicted and overwhelming that there were holes in walls, a sink that was ripped out of the wall, broken windows, doors with holes in them, broken mirrors, torn carpeting, vandalized refrigerator, popping of parquet floors, storm windows and screens with holes in them, trash abounded, garage door broken, railing and rear stairs were off, counter and sink broken, closet doors off track, doors ripped off hinges and removed, door jambs ripped off, broken and irreparable vending machines and washers and dryers, missing light fixtures, walls broken, defaced, or covered with graffiti, wall on first floor was down, plumbing fixtures, doors and mirrors broken throughout, floors buckled, shelves broken, and tiles off floors.

Claimants employed three different parties to make the necessary repairs. These repairs were started in November 1973 and the entire repair job was completed in May 1976. Contractors worked periodically due to the fact that Claimants were evidently unable to raise sufficient funds at any one time to complete the repairs before the 1976 date.

Claimants' testimony regarding the necessity of repair and the amounts expended for repair was voluminous, totally creditable and corroborated for the most part by documentary evidence. The Claimants, in the opinion of this Court, proved by overwhelming evidence that there was required the sum of $29,337.07 for repairs and restoration.

The evidence was also overwhelming that the damages were caused by the negligence and malicious acts of the residents of the building and the negligent acts of Respondent's agents and all caused after numerous oral notices and complaints made by the Claimants' agents.

That Respondent breached the lease by failure to yield the premises back in as good condition as at the date of lessee taking possession thereof was not seriously contested by any evidence brought by Respondent.

Claimants admitted that, at various times, Respondent's agents complained of inadequacies or necessity of repairs to have been made by lessor. It appeared that most of the complaints were of items whose repair was necessitated by acts or neglects of Respondent's residents and agents.

Respondent has advanced the argument that some of the repairs and restoration of the real estate and items of personal property resulted in betterments of the premises, that is, that part of the expenses incurred resulted in a better condition of the real estate and personal property and that Respondent should be given credit for such better condition. However, Respondent offered no evidence to indicate such betterments nor the value thereof. In the opinion of this Court, such betterments, if any, are so insignificant in relation to the whole of the damage as to not be worthy of consideration except for the installation of central air conditioning instead of replacement of six window air conditioners, an increase in cost of $1,600.00 which should be deducted from the total repair costs.

Claimant also makes claim for lost rentals during the period of repair and restoration and for lost rentals during a period of time that Claimants did not have sufficient funds to finance the repairs and restoration.

The evidence was that the repair and restoration took a period of time over two years and eight months because of lack of funds. Claimants proved overwhelmingly that they did not have nor could they borrow sufficient funds to hire a contractor and proceed to do the necessary work expeditiously.

Claimants, in their brief, cite the case of *Behrens v. W. S. Bills & Sons* (1972), 5 Ill. App. 3d 567, 283 N.E.2d 1, as standing for the proposition that a Claimant is required to mitigate damages on the basis of their financial ability to do so. In the *Behrens* case, the Court allowed, as an element of damages for a collapsed building, damages sustained by reason of attempts made by the plaintiffs to reopen their business but their inability to do so due to financial inability. Claimants argue that this case is applicable to the instant case and the Respondent is therefore required to pay damages for all of the time that the building in the instant case was rendered unrentable, a total for at least some of the apartments of two years and eight months.

While the *Behrens* case is accurately cited and is somewhat applicable to the instant case, Claimants ignore the language in that case which required action by the plaintiffs which was reasonable under the circumstances.

In the opinion of this Court, Claimants did not act reasonably with regard to the timing of the repairs. Doing the necessary repair work was only one of the alternatives of Claimants. They could have attempted to sell the property and their claim would have been the difference between the market price of the property and the actual sales price. It is unreasonable, in this Court's opinion, to require Respondent to pay for lost rentals for close to three years. That argument, carried to its extreme, could make Respondent the insurer of lost rentals

in perpetuity. This contention, that of requiring respondent to insure Claimants for lost rentals on an open end basis is patently unreasonable and should be rejected.

Based on the evidence, this Court feels that a period of six months would have been sufficient to gather the necessary finances, make the necessary contracts and perform all of the necessary repairs and restorations. By the testimony of Claimants' witnesses, the reasonable value of lost rents for all three apartments was $1,000.00 per month. This Court recommends awarding a total of $6,000.00 to Claimants for lost rentals.

Respondent argues forcefully in its brief that, in view of the fact that Claimants knew during the tenancy that damages were being inflicted on the property, that Claimants should have mitigated damages by instituting a suit for eviction of Respondent. Claimants, in rebuttal, argue that knowledge of the severity of the damages did not come to their attention until it was so close to the end of the lease period that it would have been futile to institute a proceeding for eviction. This Court agrees that the evidence indicated that Claimants began to see great damage starting in July of 1973 on a tenancy due to terminate September 30, 1973, and that a proceeding in forcible entry and detainer would have taken at least 30 days to obtain eviction.

However, it is not necessary for the Court to make findings on the basis of these factual contentions. Neither the Claimants nor Respondent, in making these arguments, considered that the breach of the lease actually occurred in September 1973. The lease provided that respondent "yield the demised premises back to the lessor in as good condition as at the date of lessees taking possession thereof. . ." Thus, it was not the destruction of the premises but rather the failure to restore the premises that constituted the breach. The breach of the lease took

place at the time of the yielding of possession. A claim therefore of a requirement to institute an action for forcible entry and detainer prior to the breach of lease is not at all material on the question of mitigation of damages.

This Court is of the opinion that an award of $29,337.07, less $1,600.00 for the resulting improved air conditioning system, plus $6,000.00 for lost rentals, or a total award of $33,737.07 should be awarded to Claimants, Stephen M. Mullins, Carol R. Mullins and David R. McNally.

An award in favor of Claimants is hereby made in the amount of $33,737.07.