ROBERT WALL, Plaintiff-Appellant, *v.* AMOCO OIL COMPANY, Defendant-Appellee.

Fifth District    No. 80-39

Opinion filed January 23, 1981.

Sterling & Altman, P. C., of Fairview Heights (Harry J. Sterling, of counsel), for appellant.

Harold A. Donovan and Edward J. Szewczyk, both of Donovan, Hatch & Constance, of Belleville, for appellee.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Robert Wall, appeals from the order of the circuit court of St. Clair County granting a remittitur of the jury verdict from $19,750 to $11,460.25 to conform to the proof adduced at trial. On plaintiff's motion to reconsider, the trial court increased the award to $11,791.89 due to a change in calculation pertaining to one of plaintiff's alleged items of damage. No question of liability is raised on appeal.

Plaintiff purchased a 55-gallon drum of oil from defendant, Amoco Oil Company, in March of 1974 for use in his farm machinery. Shortly after purchasing the oil and using it to change the oil in 12 pieces of his farm machinery, plaintiff's various pieces of farm equipment suffered engine failure. Based on the evidence presented at trial, the jury concluded that the cause of the engine failures was a result of plaintiff's use of defendant's oil. Plaintiff introduced evidence in the form of repair bills and bills for parts relating to the cost of having the machinery repaired. In some instances, the machinery was repaired by plaintiff.

At trial, plaintiff testified that he had repaired a 1956 model 77 Oliver diesel tractor, a 1949 or 1950 model 77 Oliver diesel tractor, a 1954 model 66 Oliver gasoline tractor, and a 1967 model 300 Massey Ferguson combine. He estimated that a reasonable hourly rate for his work would be from $4 to $5 an hour. Plaintiff testified that he spent 2 days repairing the 1956 model 77 Oliver diesel tractor, a day and a half repairing the 1949 model 77 Oliver diesel tractor, a day and a half repairing the 1954 model 66 Oliver gasoline tractor, and 2 days repairing the combine. Plaintiff stated that he worked 10 to 12 hours a day. Plaintiff further testified that he had suffered a loss of 500 bushels of beans because it took him longer to harvest the crop due to the equipment failure. Plaintiff introduced sales receipts demonstrating that on one day, October 23, 1974, the price he was paid for a bushel of beans was $7.96 and on October 24, 1974, the price paid was $7.14 per bushel. Plaintiff also testified that he did not repair a 1966 Chevrolet automobile that he owned after it developed engine trouble when defendant's oil was used in it but that he gave it to his son, who subsequently spent approximately $540 to repair it. Plaintiff also

traded in his 1968 pickup truck on a new 1974 model pickup truck rather than repair the 1968 truck after it developed engine trouble.

The trial court, after ordering the remittitur, calculated plaintiff's damages by computing the total of the repair bills for the equipment repaired by professional mechanics, the bills reflecting the money spent by plaintiff for parts to do his own repair work, and an amount due plaintiff for his time spent doing his own repair work. The trial court also averaged the prices received by plaintiff for the beans to determine plaintiff's alleged loss for the 500 bushels of beans. The court determined plaintiff's loss in this respect to be 500 bushels of beans at $7.56 per bushel, or $3,880.

With respect to the 1949 model 77 Oliver diesel tractor, the cost of the labor was found by the court to be $67.50; the cost of the labor for the 1954 model 66 Oliver gasoline tractor was found to be $67.50; the cost of the labor for the combine was found to be $99; and the cost of the labor for the 1956 model 77 Oliver diesel tractor was found to be $99. The trial court did not allow any damages for the 1966 Chevrolet or the 1968 pickup truck.

On appeal, plaintiff contends that the trial court erred in using an average of his estimate of hours spent in repairing the equipment and an average of the estimated hourly rate for his work in determining the cost of his labor in repairing the machinery; that the trial court erred in not awarding any damages for the 1966 Chevrolet or the 1968 pickup truck; and, finally, that the trial court erred in averaging the sale price of the beans.

■■ ■ The trial court correctly refused to award damages for the 1966 Chevrolet and the 1968 pickup truck. With respect to the 1968 pickup truck, plaintiff made no effort to repair the truck, the cost of repairs being the usual measure of damages for items of personal property (*Kroch's & Brentano's, Inc. v. Barber-Colman Co.* (1973), 16 Ill. App. 3d 412, 306 N.E.2d 522); therefore, it would have been necessary for plaintiff to have introduced evidence of the value of the truck immediately before the injury occurred and the value of the truck after the injury occurred in order to recover damages. (*Lucas v. Bowman Dairy Co.* (1964), 50 Ill. App. 2d 413, 200 N.E.2d 374.) No evidence of the value before and after the injury occurred was introduced by plaintiff at trial. Likewise, plaintiff made no effort to repair the 1966 Chevrolet. The same measure of damages would be applicable to the Chevrolet as to the pickup truck. Plaintiff introduced repair bills incurred by his son in repairing the automobile, but these were not shown to be expenses incurred by plaintiff and consequently cannot be considered as damages incurred by him. *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 392 N.E.2d 1.

Plaintiff also contends that the trial court erred in averaging plaintiff's

estimates of the time he spent repairing each piece of machinery and in averaging the amount estimated by plaintiff to be his hourly wage rate.

The standard for the assessment of damages for injury to personal property, if it is repairable, is the reasonable cost of repairs. (*Behrens v. W. S. Bills & Sons* (1972), 5 Ill. App. 3d 567, 283 N.E.2d 1.) The trial court is not required to calculate the amount of damages at the highest possible cost but at a "reasonable cost." It was plaintiff's testimony that his services were worth between $4 and $5 an hour and that his working days ranged in length from 10 to 12 hours. In order to arrive at an amount of damages calculated to compensate plaintiff for his damages, it is reasonable to use an average amount for the wages and for the hours testified to by plaintiff. Regardless, plaintiff has no standing to dispute these figures on appeal because he agreed at trial to use an average of his estimated time and hourly rate. Further, with respect to the damages incurred by plaintiff for his beans, plaintiff argues that the trial court erred in averaging the two sales slips to calculate the damages. As plaintiff pointed out, the price of beans fluctuates from day to day. It would be impossible to calculate the exact amount of damage incurred by plaintiff, and in the calculation of damages mathematical exactitude is not required. (*De Koven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 327 N.E.2d 378.) Therefore, the trial court in averaging the sales slips calculated to a reasonable degree of certainty the loss suffered by plaintiff.

We would also note that plaintiff was awarded $1,992 as the cost of repairs for damages to his 1956 model 77 Oliver diesel tractor. The market value of the tractor was estimated by Hops Walker, a mechanic specializing in the repair of farm machinery, to be between $700 and $1,000. The cost of repairs is usually the measure of damages; however, where the cost of repairs exceeds the fair market value of the personal property, the value of the property becomes the ceiling on the amount of damages which can be recovered, the purpose of awarding compensatory damages being to make the injured party whole, but not to enable him to make a profit on the transaction. (*Santiemmo v. Days Transfer, Inc.* (1956), 9 Ill. App. 2d 487, 133 N.E.2d 539.) However, since neither party has raised this point on appeal, we will not recalculate the trial court's computation on appeal.

Plaintiff argues that by entering a remittitur the trial court usurped the jury's function of assessing damages. This court stated in *Roewe v. Lombardo* (1966), 76 Ill. App. 2d 164, 175, 221 N.E.2d 521, 526, that:

> "While the assessment of damages is a jury function, it is for the trial judge in the exercise of a sound discretion, to determine whether under the instructions given the jury and the evidence before them their award had a foundation in the evidence and the elements they could consider on fixing the figure. Barango v.

Hedstrom Coal Co., 12 Ill. App. 2d 118, 138 N.E.2d 829. In the Barango case, supra, the court said:

'The responsibility rests upon the trial court to properly consider the evidence before it, and in a proper case where the verdict is excessive, to either enter a remittitur or grant a new trial.' "

Plaintiff contends that the jury, in making its assessment of damages, may have taken into consideration factors such as the value of the loss of use of the equipment, plaintiff's trips to Greenville to obtain parts and supplies, and the loss sustained by plaintiff on the 1968 pickup truck. There was no evidence adduced at trial to enable the jury to calculate the value of the loss of use of the machinery (*Plesniak v. Wiegand* (1975), 31 Ill. App. 3d 923, 335 N.E.2d 131), the expense of plaintiff's trips to Greenville, or the value of the 1968 pickup truck and, therefore, the jury should not have considered those factors in arriving at a verdict.

The trial court, after reviewing the evidence adduced at trial, concluded that the jury's verdict was excessive in light of the evidence presented to them and entered a remittitur. We conclude that the court properly entered the remittitur in this case and that the subsequent verdict was in conformity with the proof.

For the foregoing reasons, the order of the circuit court of St. Clair County granting a remittitur of the jury verdict from $19,750 to $11,460.25 is affirmed.

Affirmed.

JONES and HARRISON, JJ., concur.