**WILLIAMS–BOWMAN RUBBER COMPANY, an Illinois corporation, now known as Wilbow, Inc., Western National Bank as Trustee under Trust No. 9236, an Illinois banking corporation, and Cicero Real Estate Venture, an Illinois proprietorship, and Affiliated FM Insurance Company as Subrogee of Williams Bowman Rubber Company, Plaintiffs,**

v.

**INDUSTRIAL MAINTENANCE, WELDING AND MACHINING COMPANY, INC., an Indiana corporation, Defendant.**

Nos. 85 C 08964, 85 C 10456.

United States District Court,
N.D. Illinois, E.D.

Dec. 29, 1987.

Daniel J. Leahy, Anne M. Bedinghaus, James M. DeZelar, Robbins, Rubenstein, Salomon & Greenblatt, Chicago, Ill., for plaintiffs.

Clinton J. Feil, Edward L. Cooper, Robert L. Kiesler, Duane J. St. Pierre, Kiesler & Berman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

The plaintiffs, Wilbow, Inc. ("Wilbow"), Cicero Real Estate Venture and Affiliated FM Insurance Company ("AFM"), brought this action for breach of contract and negligence against the defendant, Industrial Maintenance, Welding and Machining Co., Inc. ("Industrial"), seeking to recover damages for injuries to Wilbow's real and personal property which resulted from a fire on December 10, 1984.

Before the court is Industrial's motion to bar the plaintiffs from recovering "depreciation" as an element of the damages. Specifically, Industrial contends that approximately $150,000 of the $420,000 that the plaintiffs seek to recover constitute "improvements" to the property which the plaintiffs should be barred from recovering.[1] Unsurprisingly, the plaintiffs do not take the same view of the matter. Before addressing the substance of Industrial's motion, however, we examine Illinois law on damages.

## I. ILLINOIS LAW ON DAMAGES

### A. Personal Property

Ascertaining the measure of damages for injuries to personal property is straightforward. If the personal property is repairable, then the measure of damages is the reasonable cost of repairs. *Wall v. Amoco Oil Co.*, 92 Ill.App.3d 921, 48 Ill. Dec. 432, 435, 416 N.E.2d 705, 708 (5th

---

1. We believe that Industrial's motion would be better labeled as a motion to bar recovery of "improvements", rather than "depreciation." "Depreciation" refers to a reduction in value; "improvements" refers to changes which (at least in this context) enhance the value of the object which has been changed. As we understand its motion, Industrial seeks to prevent the plaintiffs from recovering improvements, but has inadvertently mislabeled it as depreciation.

Dist.1981); *People v. Tidwell*, 33 Ill.App.3d 232, 338 N.E.2d 113, 117 (1st Dist.1975). If, however, the value of the personal property after repairs is less than the value before the injury, then the measure of damages also includes the difference in value. *Kroch's & Brentano's, Inc. v. Barber–Colman Co.*, 16 Ill.App.3d 412, 306 N.E.2d 522, 525 (1st Dist.1973); *Trailmobile Division of Pullman, Inc. v. Higgs*, 12 Ill.App. 3d 323, 297 N.E.2d 598, 600 (5th Dist.1973).

If, on the other hand, the damage is not capable of being repaired, as where the personal property is totally destroyed, or if the repair costs exceed the fair market value of the personal property before the injury, then the measure of damages is the fair market value of the property immediately prior to the damage.[2] *Gannon v. Freeman*, 103 Ill.App.3d 917, 919, 59 Ill. Dec. 546, 548, 431 N.E.2d 1303, 1305 (1st Dist.1982); *Wall*, 48 Ill.Dec. at 435, 416 N.E.2d at 708; *Higgs*, 297 N.E.2d at 600; *Behrens v. W.S. Bills & Sons, Inc.*, 5 Ill. App.3d 567, 576, 283 N.E.2d 1, 7 (3d Dist. 1972); *Santiemmo v. Days Transfer, Inc.*, 9 Ill.App.2d 487, 502, 133 N.E.2d 539 (1st Dist.1956).

### B. Real Property

The rules governing the measure of damages for injuries to real property, unfortunately, are not as easily determined as those applying in cases involving injuries to personal property. Indeed, it is difficult (if not impossible) to reconcile the decisions of the Illinois courts addressing the issue of the proper measure of damages for injuries to real property. Happily, our task is not to harmonize Illinois law, but to apply it. *See Palmer v. Beverly Enterprises*, 823 F.2d 1105, 1114 (7th Cir.1987) (Easterbrook, J., concurring). Nevertheless, in order to determine the proper measure of damages for the injuries to Wilbow's building, we believe that a thorough review of Illinois law is necessary.

*Fitzsimons & Connell Co. v. Braun*, 199 Ill. 390, 65 N.E. 249 (1902) is our starting point. In *Fitzsimons*, the defendant, while detonating explosives in order to excavate a tunnel, "permanently and irreparably impaired the appearance, strength and stability" of the plaintiff's building. The Illinois Supreme Court, over the defendant's contention that the measure of damages was "the depreciation in value resulting from the injuries," held that "the costs of repairing the building and restoring it to its proper condition [i]s the true measure of damages." *Id.* at 397, 65 N.E. 249. The court, recognizing the potential conflict between these different formulae, explained that in deciding which measure of damages to apply, a court should adopt "that valuation * * * which will be most beneficial to the injured party, for he is entitled to the benefit of the premises intact and to the value of any part separated. The damages for injury done to a house are measured by the cost of restoring it to its previous condition."[3] *Id.* at 398, 65 N.E. 249, quoting 3 *Sutherland on Damages* sec. 1018.

Two years later, in *Beidler v. Sanitary District of Chicago*, 211 Ill. 628, 71 N.E. 1118 (1904), several dock owners sued after the defendant dug out a sanitary canal which caused the water level at the plaintiffs' docks to drop to a level which rendered their docks unusable. The plaintiffs were forced at considerable expense to excavate in order to return the water level to normal, and they sued to recover their expense. The court, however, held that where real property is damaged by reason of a public improvement, the measure of damages is the depreciation in the value of the property which results from the improvement, not the cost of repair. *Id.* 71 N.E. at 1121. The court did not discuss its apparent disagreement with the rule stated in *Fitzsimons*.

---

**2.** This limitation stems from the purpose of awarding compensatory damages, which is to make the injured party whole, and not to enable him to make a profit on the transaction. *Wall,* 48 Ill.Dec. at 435, 416 N.E.2d at 708; *Santiemmo,* 9 Ill.App.2d at 502, 133 N.E.2d 539.

**3.** The court thus recognized that the cost-of-repair measure of damages compensates a party for injuries to two distinct property interests: one's *ownership* interest in property; and one's interest in the *use* of property. *See generally* 22 Am.Jur.2d *Damages* sec. 133 (1965).

In *Swanson v. Nelson*, 127 Ill.App. 144 (1st Dist.1906), the defendant, through a trespass, caused the plaintiff's building to settle and crack. The appellate court, citing neither *Fitzsimons* nor *Beidler*, held that the proper measure of damages was the expense which the plaintiff had incurred in repairing the building. *Id.* at 149. The cost of repair measure of damages was proper because it:

> makes the damages conform to the general theory of law that they are to be indemnity or compensation. But it frequently happens that an injury or trespass to real property may be in a certain sense irreparable. The conditions before the trespass was committed or the injury done cannot be restored at all, or can be restored only at a very great and disproportionate expense. In either of these cases another measure of damages is properly adopted by the courts, namely, the difference in market value of the property before and after the act complained of. The result of this reasonable view * * * has been to establish a rule that makes the measure of damages, in cases of injury to real estate, the cost of restoration or the difference in market value, as one or the other is the less amount.

*Id.* at 149 (citations omitted). According to the *Swanson* Court, then, the proper measure of damages for injuries to real property is the lesser amount between the cost of repair and the diminution in value of the property as a result of the damage. This rule (which is very similar to the measure of damages applied in cases involving injuries to personal property) is squarely at odds with *Fitzsimons's* injunction that the court adopt "that valuation which is most beneficial to the injured party."

The appellate court revisited this issue in *Donk Bros. Coal & Coke Co. v. Slata*, 133 Ill.App. 280 (4th Dist.1907), and *Donk Bros. Coal & Coke Co. v. Novero*, 135 Ill.App. 633 (4th Dist.1907). Both *Slata* and *Novero* involved situations in which the defendant's mining operation had caused injury to the plaintiffs' buildings; and in both cases the court, relying on *Fitzsimons*, held that the proper measure of damages was the cost of repair.

In *Slata*, the court noted that the general measure of damages for injuries to real property is the depreciation in the market value of the property which results from the injury. The cost-of-repair measure of damages is an exception to the general rule:

> The rule seems to be that, when the reasonable cost of repairing the injury * * * is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages, the rule of avoidable consequences requiring that the plaintiff shall diminish the loss as far as possible.

*Id.*, 133 Ill.App. at 283. Citing *Fitzsimons*, the court also stated that a court should adopt "that valuation * * * which will be most beneficial to the injured party * * *." *Id.* at 284. It is, however, somewhat difficult to reconcile these two passages. The first embraces the rule set forth in *Swanson*, which, as we noted above, is inconsistent with the rule stated in *Fitzsimons*, which is itself endorsed in the second.

*Novero*, although reaching the same conclusion as *Slata*, employed a different line of reasoning. The cost-of-repair rule was appropriate in *Novero* because:

> [t]he value [of the real property] at any time depended upon the condition of the buildings [and t]he best evidence of the extent of the injury to the buildings is the cost of restoring them to the condition before the injury. Or put in another way, the value of the property as affected by the buildings will be depreciated by injury to the building, and a fair measure of that depreciation will be the necessary cost and expense to repair the building and restore it to its original condition.

135 Ill.App. at 636.[4] *Novero* thus attempts to harmonize the different formulae: al-

---

4. Although the court states that the repair cost is

that which is necessary to restore the property

though the measure of damages for injuries to real property is the diminution in value caused by the injuries, a "fair measure" of that diminution is found in the restoration or repair cost. No decision since *Novero* has endeavored to reconcile the different measures of damages in this fashion. The reason for this orphaning may be traced to the court's reliance on the existence of a "relationship" between the cost of repairing real property and the fair market value of real property. This relationship (if any) is shaky indeed. Restoring property to its pre-injury condition may eliminate the depreciation in its fair market value which results from the injury. It by no means follows, however, that the cost of repairing the property will coincide with the amount of depreciation caused by the injury.

*Peck v. Chicago Rys. Co.,* 270 Ill. 34, 110 N.E. 414 (1915), involved facts very similar to those presented in *Fitzsimons.* In *Peck,* as in *Fitzsimons,* the plaintiffs sued the defendant for injuries to their building resulting from the defendant's use of explosives while excavating a tunnel. Unlike *Fitzsimons,* however, the court held that the proper measure of damages was the diminution in the value of the property as a result of the injury. In so holding the court cast considerable doubt on the continued vitality of the rule set forth in *Fitzsimons* because it was "at variance with the [diminution-in-value] rule which has been frequently announced by this court * * *." *Id.,* 110 N.E. at 417.

In *Clarke v. Public Service Co.,* 278 Ill. App. 426 (2d Dist.1934), the defendant removed the plaintiff's water meter and severed the service wires to the plaintiff's water pump after a fire had started, allowing the plaintiff's house to burn to the ground. The appellate court, citing *Peck,* held that the proper measure of damages was the depreciation in the market value of the property as a result of the fire. *Id.* at 446. The court distinguished *Swanson, Slata, Novero,* and *Fitzsimons,* on the basis that they involved actions for trespass

(whereas *Clarke* involved an action for negligence) and because the "courts adopted the view that the buildings destroyed had a value apart from the real estate upon which they stand." *Id.* at 449.

*Johnson v. Pagel Clikeman,* 343 Ill.App. 346, 99 N.E.2d 148 (2d Dist.1951), applied *Clarke,* but with a twist. In *Johnson,* the defendant negligently burned down the plaintiffs' barn while repairing the plaintiffs' tractor. The plaintiffs, relying on *Slata* and *Novero,* contended that the proper measure of damages was the replacement value of the barn. The court rejected the plaintiffs' position, however, and held that the measure of damages was the difference in the market value of the property before and after the fire. *Id.,* 99 N.E.2d at 150. The court reasoned that *Slata* and *Novero* were inapposite because "in both of th[o]se cases the damaged buildings were not totally destroyed, but could be repaired. There is a different rule of law applied in measuring the damages under such circumstances." *Id.,* 99 N.E.2d at 149. Underlying the court's decision was the realization that if the replacement value of the barn was the measure of damages, it could "cost ten times as much to replace one of these old barns [than] it [was] actually worth." *Id.,* 99 N.E.2d at 150.

Similarly, in *Dixon v. Montgomery Ward & Co.,* 351 Ill.App. 75, 114 N.E.2d 44 (2d Dist.1953), the court held that where "improvements on real estate are totally consumed by fire [as was the plaintiff's residence] the measure of damages is the difference in the market value of the property immediately before and after the injury." *Id.,* 114 N.E.2d at 52.

*Johnson* and *Dixon,* and to a lesser extent *Clarke,* teach that where a building is injured and cannot be repaired, the injury is considered "permanent", and therefore the measure of damages is the diminution in the market value of the property as a

to its "original" condition, we believe the court meant the condition of the property immediate-

ly prior to the injury.

result of the injury, not the cost of repairs which cannot be effected.

*Kremeyer v. Shumate*, 20 Ill.App.2d 542, 156 N.E.2d 271 (2d Dist.1959), is in accord with our reading of *Johnson* and *Dixon*. In *Kremeyer*, the defendant negligently permitted garbage and debris to be washed by rain onto the plaintiff's property, plugging up the plaintiff's drainage pipe and causing the drain water to back up, thereby damaging the plaintiff's garage, lawn and carpets. Although affirming the trial court's award of cleanup costs to the plaintiff, the court noted that ordinarily the measure of damages for injuries to real property is the difference in the fair market value of the property immediately before and after the injury. This is true, the court added:

> particularly where the injury to real estate is permanent. \* \* \* Under some circumstances, the proper measure of damages may be the cost of restoration of the property to its condition before the injury occurred, as where the injury is susceptible to be repaired at moderate expense and the cost of restoration may be shown with reasonable certainty. *Clarke v. Public Service Co.*, 278 Ill. App. 426; *Dixon v. Montgomery Ward & Co.*, 351 Ill.App. 75, 114 N.E.2d 44. Thus the damages for injury done to a dwelling are measured by the cost of restoring it to its previous condition. *Fitzsimons & Connell Co. v. Braun*, 199 Ill. 390, 65 N.E. 249, 59 L.R.A. 421.

*Id.*, 156 N.E.2d at 273–74. The court, for reasons unknown, did not see fit to discuss *Peck*.

In *Peet v. Dolese and Shepard Co.*, 41 Ill.App.2d 358, 190 N.E.2d 613 (2d Dist. 1963), the defendant detonated explosives in a quarry near the plaintiffs' home, causing the plaster and basement wall in the plaintiffs' residence to crack. The court, relying on *Fitzsimons*, and without reference to *Peck*, held that the plaintiffs were entitled to recover the cost of repairing the building and restoring it to its condition prior to the injury. *Id.*, 190 N.E.2d at 618.

In *Central National Bank v. Central Illinois Light Co.*, 65 Ill.App.2d 287, 212 N.E.2d 489 (3d Dist.1965), an explosion which resulted from a leak in the defendant's gas main totally destroyed the plaintiff's residence and store building. Citing *Dixon* and *Clarke*, the court held that the measure of damages was the difference in the market value of the property immediately before and after the injury. *Id.*, 212 N.E.2d at 491. *See also Schwartz v. City of Chicago*, 21 Ill.App.3d 84, 315 N.E.2d 215, 224 (1st Dist.1974) (applying diminution in value rule where plaintiff's building was demolished); *Stirs, Inc. v. City of Chicago*, 24 Ill.App.3d 118, 320 N.E.2d 216 (1st Dist.1974) (same).

By 1977, *Peck* was so far forgotten that in *Peluso v. Singer General Precision*, 47 Ill.App.3d 842, 8 Ill.Dec. 152, 365 N.E.2d 390 (1st Dist.1977), in which the plaintiff's building was partially damaged by an explosion, the court cited *Fitzsimons* for the proposition that "[i]n Illinois, damages are *generally* measured by the cost of repair and not by the diminution in value." 8 Ill.Dec. at 162, 365 N.E.2d at 400 (emphasis supplied).

In *Arras v. Columbia Quarry Co.*, 52 Ill.App.3d 560, 10 Ill.Dec. 192, 367 N.E.2d 580 (5th Dist.1977), the defendants detonated explosives which caused the plaintiffs' water well to run dry. Although citing *Peck* for the proposition that the diminution in value "formula has most often been applied in cases involving injury to buildings and other improvements," the court held that the plaintiffs were entitled to recover the expense which they incurred in digging a new well. 10 Ill.Dec. at 195–96, 367 N.E.2d at 583–84.

Candidly acknowledging the "conflicting results" in the Illinois case law, the *Arras* Court attempted to enunciate a coherent set of rules which would avoid these inconsistencies in future cases. The rules which the court fashioned focused on the nature of the injury involved: if the injury is reparable (i.e., temporary), then the measure of damages is the cost of repairs necessary to restore the property to its condition immediately prior to the injury. If, on the other hand, the injury is irreparable (i.e., permanent), then the diminution in value

rule applies. The critical inquiry thus becomes determining whether an injury is "temporary" or "permanent." In *Arras,* the court suggested that an injury is temporary if it is "abatable", that is, capable of being corrected. Since a new well could be dug, the court reasoned that the plaintiffs' injury was abatable and therefore temporary. Thus, the proper measure of damages was the expense that the plaintiffs incurred in digging a new well.[5]

In *Aetna Ins. Co. v. 3 Oaks Wrecking & Lumber Co.,* 65 Ill.App.3d 618, 21 Ill.Dec. 919, 382 N.E.2d 283 (1st Dist.1978), the court held that the proper measure of damages was the cost of repair or restoration where the plaintiff's building was partially damaged by fire. 21 Ill.Dec. at 926, 382 N.E.2d 290. Likewise, in *Zosky v. Couri,* 77 Ill.App.3d 1033, 33 Ill.Dec. 837, 397 N.E.2d 170 (3d Dist.1979), the court held that tire ruts in the plaintiff's lawn were temporary injuries, and that the plaintiff was entitled to recover the cost of restoring the lawn to its condition prior to the injury.

 Where does this review leave us? We must "decide this case as it would be decided in Illinois." *Palmer v. Beverly Enterprises,* 823 F.2d 1105, 1113 (7th Cir. 1987) (Easterbrook, J., concurring). Given the varying results reached by the Illinois courts, this is no small task. Nevertheless, certain conclusions may be drawn. First, the decisions of the Illinois appellate courts essentially decline to follow *Peck.* On a day-to-day basis, the Illinois appellate courts do not measure damages for injuries to real property by employing the diminution in value rule. Rather, the courts apply the cost of repair or the diminution in value measure of damages depending upon the nature of the injury involved. If real property is partially injured, *and* the injury may be repaired in a practicable manner, then the proper measure of damages is the cost of restoring the property to its condition prior to the injury. If, however, the real property is totally destroyed or damaged in a manner which renders repair impracticable,[6] then the diminution in value rule applies.

Distinguishing between temporary and permanent injuries is consistent with the purpose of awarding compensatory dam-

---

**5.** Although the *Arras* Court distinguished between "temporary" and "permanent" injuries, the court did not elaborate upon the relationship between the concept of "abatability" and characterizing an injury as temporary or permanent. For example, if a dry well is an abatable (and therefore temporary) injury *because* a new well may be dug, it is difficult to understand why a barn which has been totally destroyed by fire (but which may be rebuilt) is an unabatable (and therefore permanent) injury. *See Johnson v. Pagel Clikeman,* 343 Ill.App. 346, 99 N.E.2d 148, 149–50 (2d Dist.1951). The answer, we believe, is that the concept of an abatable injury includes the concept of impracticability. *See infra* note 6.

**6.** An injury would be impracticable to repair if it would put the defendant to disproportionate expense or effort to restore it to its condition prior to the injury. *See* Restatement (Second) of Contracts sec. 261 comment d (1981). The concept of impracticability would explain, for example, why courts will not compel a defendant to rebuild a barn with a market value of $50 at a replacement cost of $500. *See Johnson v. Pagel Clikeman,* 343 Ill.App. 346, 99 N.E.2d 148 (2d Dist.1951).

This leaves one rub in the conceptual framework: why is an injury necessarily permanent if, even though the property is totally destroyed, it can be rebuilt or replaced in a practicable

fashion? There are two responses. First, it is not. In *Arras,* the court held that an injury to a water well which had been completely drained of water was a temporary injury even though the plaintiffs had to dig a *new* well. Thus, one could argue that *Arras* applied the impracticability requirement where the injured property had been totally destroyed, at least as much as were the barn in *Johnson* and the buildings in *Schwartz* and *Stirs.*

On the other hand, one may take the position that an injury to real property is in a certain sense irreparable. *See Swanson v. Nelson,* 127 Ill.App. 144, 149 (1st Dist.1906). Thus, where real property is totally destroyed, one could maintain that the injured property cannot be restored. This rationale cannot explain the result in *Arras;* but with the exception of *Arras,* it is the rule which the Illinois courts apply, and therefore which we must apply. Logically, it is not a particularly strong position: if an injury to real property is "in a certain sense irreparable", then it stands to reason that it is irreparable regardless of the *extent* of the injury. This in turn, necessitates the conclusion that any injury to real property is irreparable, and would require application of the diminution in value rule in every instance. But, as we have seen, the case law does not support this view.

ages, which is to make an injured party whole without penalizing the responsible party. If an injury is capable of being repaired in a practicable fashion, then the injured party can be made whole through restoration and repair without punishing the liable party. If, on the other hand, the property is totally destroyed or may be repaired only in an impracticable manner, then it is impossible to put the injured party in the position he was in before the damage without penalizing the party responsible for causing the injury. Therefore, the courts will apply the diminution in value rule.

## II. THE DEFENDANT'S MOTION

The plaintiffs seek to recover $271,000 for injuries to their real property and $158,385 for injuries to their personal property. Industrial contends that $135,000 of the amount claimed for damages to the real property and $15,000 of the amount claimed for damages to the personal property "constitute improvements which would put the Plaintiffs in a position * * * better * * * than they were before the fire." [7] Industrial's Mem. at 4.

The plaintiffs respond that the damages they seek with respect to the repairs made to the building are not improvements, but that Wilbow had entered into approximately $345,000 worth of contracts to remodel the building and that most of these monies had been spent [8] when the fire occurred on December 10, 1984. The plaintiffs also assert that the depreciation figures to which Hagen testified are "only applicable to the determination of Actual Cash Value under the terms and conditions of the policy of insurance between Wilbow and [AFM] if, in fact, the building and contents were not repaired. They were repaired." Plaintiff's Mem. at 5.

■ On the basis of the pleadings before us, we do not believe that it would be proper to bar the plaintiffs from recovering $135,000 in real property damages and $15,000 in personal property damages. There is clearly a contested issue of fact regarding the condition of the Wilbow's building before the fire. Neither party has submitted any documentation establishing what improvements (if any) were made to the building before the fire. Therefore, we cannot say that the plaintiffs are seeking damages which, if they were successful in recovering, would place them in a better position than they were in before the injury.

With respect to the personal property, neither Industrial nor the plaintiffs have submitted any evidence of the fair market value of the various items of personal property before they were injured in the fire. Nor have they submitted the repair costs (if any) for these items.

■ There is a further difficulty with Industrial's argument. Industrial concedes that Wilbow is entitled to be restored to the "condition" it enjoyed before the injury, "but not one which is nearly twice that amount [with respect to the building's fair market value]." Industrial's Reply at 6. We believe that Industrial has combined improperly the different measures of damages. Where, as here, the cost of repair rule applies, the plaintiff is entitled to recover the cost of restoring the real property to its *physical* condition immediately prior to the injury (provided that such repairs can be accomplished in a practicable fashion), regardless of the effect such repairs have on the fair market value of the property.

Industrial's argument, however, suggests that Wilbow is entitled to recover only those repair costs which are necessary to restore the building to its *fair market value* before the injury. Thus, while Industrial insists that the proper measure of damages for injuries to Wilbow's building is the cost of restoring it to its condition before the injury, Industrial would limit the

---

7. Industrial obtained these figures from the plaintiffs' expert, Michael Hagen, during a discovery deposition. Although Industrial has not attached a transcript of Mr. Hagen's testimony to its motion, the plaintiffs do not challenge the accuracy of the amounts to which Mr. Hagen testified.

8. We note that for purposes of recovering damages there may be a distinction between monies paid for improvements which have been completed or begun and those which had not been initiated at the time of the injury.

amount of repairs done to the building to those necessary to restore the building to its fair market value before the injury. We are unswayed. A brief example will help to illustrate why such a rule would be improvident. Suppose that in 1984 the roof of a commercial building worth $50,000 is partially damaged by fire. The fair market value of the building after the fire is $25,000. To restore the building to its condition before the fire will cost $25,000. While the repairs are being effected, however, real property values appreciate. Now if the roof is completely repaired, the building will have a fair market value of $75,000. Under Industrial's reasoning, the owner of the building could not complete the repairs because it would result in a "windfall" of $25,000 to the owner. Not so. The owner of the building realizes no "windfall." By completely repairing the building, he is restored with a $75,000 asset which he would have possessed had the fire not occurred.

The point of our example is simple: where the measure of damages for injuries to real property is the cost of restoring it to its pre-injured physical condition, the amount of damages that can be recovered should not be limited to those costs that are necessary to restore the injured property to its fair market value before the injury. Why? Because the fair market value of property is not static, it is dynamic. Accordingly, if this limit were imposed, an injured party might (as in our example) be placed in a worse (or better) position than he was in prior to the injury (unless of course the property's fair market value remained unchanged). Why is this objectionable? Because it is inconsistent with the very purpose of awarding compensatory damages, which is to make the injured party whole.

## III. CONCLUSION

For the reasons set forth above, the defendant's motion to bar the plaintiffs from recovering "depreciation" is DENIED.